UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADRIAN WALL, :
:
    Plaintiff : No. 3:12-CV-00144
:
vs. : (Judge Kosik)
:
CAROLYN W. COLVIN, ACTING :
COMMISSIONER OF SOCIAL :
SECURITY, :
:
    Defendant :

FILED
SCRANTON
NOV 1 8 2013
PER_____
DEPUTY CLERK

**MEMORANDUM**

**BACKGROUND**

    The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Adrian Wall's claim for supplemental security income benefits.

    Supplemental security income ("SSI") is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

    Wall was born in the United States on August 9, 1988. Tr. 48, 106 and 132.[1] Wall graduated from high school and his secondary education records indicate that he was an above average student although he did receive both special education and emotional services. Tr. 190, 221-39, 241-242, 294, 298, 520-522.

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on March 29, 2012.

His cumulative grade point average at the end of the 11th grade was 91.2661 representing a B average. Tr. 242. Wall has no employment or earnings history. Tr. 84, 144, 172 and 521.

Wall, on November 12, 2004, when he was 16 years of age was approved for SSI benefits effective October 1, 2004, because of attention deficit hyperactivity disorder.[2] Tr. 48. After Wall reached the age of 18, the Commissioner, as required by statute, reviewed whether Wall was entitled to continue receiving SSI benefits.[3] Wall alleged a continuing disability because of attention deficit hyperactivity disorder, major depressive disorder, posttraumatic stress disorder, asthma, scoliosis, right ventricular hypertrophy, sleep apnea and allergies. Tr. 143.

Based on a review of the evidence, it was concluded that Wall was no longer disabled as of July 1, 2007. This review had several steps. There was an initial records review by the Bureau of Disability Determination[4] which resulted in a finding that Wall

---

2. According to the website of the National Institute of Mental Health "[a]ttention deficit hyperactivity disorder (ADHD) is one of the most common childhood disorders and can continue through adolescence and adulthood. Symptoms include difficulty staying focused and paying attention, difficulty controlling behavior, and hyperactivity (over-activity)." Attention Deficit Hyperactivity Disorder (ADHD), National Institute of Mental Health, http://www.nimh.nih.gov/health/publications/attention-deficit-hyperactivity-disorder/complete-index.shtml (Last accessed November 12, 2013).

3. This claim for SSI benefits was reviewed using the adult disability standards. 20 C.F.R. § 416.987(b).

4. The Bureau of Disability Determination is an agency of the
(continued...)

was no longer disabled. Tr. 49-52 and 55-58.[5] However, his SSI benefits did not immediately terminate. Tr. 56 and 110-111. On September 27, 2007, Wall elected to continue receiving SSI payments until the conclusion of the administrative proceedings. Id.

After the initial review by the Bureau of Disability Determination, Wall had the right to request reconsideration which involved a hearing before a Disability Hearing Officer ("DHO"). Tr. 57. On July 31, 2007, Wall filed a request for reconsideration and a hearing was held on April 29, 2008. Tr. 59-70 and 71. Wall and his mother, Rosemary Lane, appeared at the hearing before the DHO, and the DHO, in a decision dated June 17, 2008, concluded, based on the evidence in the file and the testimony of Wall and his mother, that Wall was not disabled. Tr. 71-85. On June 18, 2008, Wall was notified of the decision and his right to request a hearing before an administrative law judge. Tr. 86-91.

On June 25, 2008, Wall filed a request for a hearing before an administrative law judge. Tr. 92. After 9 months had elapsed, a hearing was held before an administrative law judge on

---

4. (...continued)
Commonwealth of Pennsylvania which initially evaluates applications for SSI benefits on behalf of the Social Security Administration.

5. The Bureau of Disability Determination reviewed, inter alia, forms submitted by Wall's mother, medical records, and a report of a consultative examination by a licensed psychologist.

3

March 5, 2009. Tr. 514-549. At that hearing, Wall, his mother and a vocational expert testified. Id. On June 17, 2009, the administrative law judge issued a decision finding that Wall's "disability ended on July 1, 2007, and [that he had] not become disabled again since that date." Tr. 35-42. On July 27, 2009, Wall filed a request for review with the Appeals Council. Tr. 31. The Appeals Council then, on September 14, 2010, concluded that there was no basis upon which to grant Wall's request for review. Tr. 6-9. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Wall then filed a complaint in this court on January 25, 2012.[6] Supporting and opposing briefs were submitted and the appeal[7] became ripe for disposition on August 10, 2012, when Wall elected not to file a reply brief.

---

6. The notice of the Appeals Council's decision sent to Wall advised him that he had sixty (60) days to file a civil action in federal court. In his complaint, Wall admitted that he received notice of the Commissioner's decision on September 14, 2010. 42 U.S.C. §405(g) states in relevant part that in order to obtain review in federal court a party denied benefits must file an action in federal court within sixty days after the mailing to him of a notice from the Commissioner that review of the ALJ's decision was denied. Section 405(g) appears to preclude this court from exercising jurisdiction. However, in answering the complaint, the Commissioner stated that "the Court has jurisdiction" under 405(g). Doc. 7, Defendant's Answer, ¶2.

7. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

For the reasons set forth below we will affirm the decision of the Commissioner.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176

(4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994

F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. The first step involves the determination of whether or not the claimant has engaged in substantial gainful activity. However, this first step is not utilized when determining whether an individual who received child SSI disability benefits and reached the age of 18 is still disabled. 20 C.F.R. § 416.987(b).

The remaining sequential evaluation process requires the Commissioner to consider whether a claimant (1) has an impairment that is severe or a combination of impairments that are severe,[8] (2) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[9] (3) has the

---

8. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2).

9. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to
(continued...)

residual functional capacity to return to his or her past work, and (4) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The administrative law judge at step one of the sequential evaluation process noted its inapplicability to this case. Tr. 36.

---

9. (...continued)
prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

At step two of the sequential evaluation process, the administrative law judge found that Wall had the following severe impairments: "attention deficit hyperactivity disorder and depression[.]" Tr. 37. The administrative law judge also found that Wall had no severe physical impairments. Id.

At step three of the sequential evaluation process the administrative law judge found that Wall's impairments did not individually or in combination meet or equal a listed impairment. Tr. 38.

At step four of the sequential evaluation process, the administrative law judge recognized that Wall had no prior work experience and found that Wall had the residual functional capacity to perform "the full range of all work levels of exertions which does not require operating machinery, climbing ladders or scaffolds or exposure to extremes of humidity in the job environment." Id. The administrative law judge found that Wall had "mental impairments which caused non-exertional limitations which restrict him to work which does not deal directly with the public or requires constant or frequent interaction with co-workers or supervisors and does not involve traveling requirements to strange or unfamiliar places as part of his job duties." Id. The administrative law judge further found that Wall could "understand, remember and carry out simple instructions, make simple work-related decisions, respond

appropriately to supervision, co-workers and usual work situations and handle changes in routine work setting appropriately." Id.

In setting this residual functional capacity, the administrative law judge relied on the lack of any medical evidence indicating that Wall suffered from medical conditions that prevented him from engaging in physical exertion at all work-levels as defined in the regulations[10] and the opinion of one

---

10. The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) *Medium work.* Medium work involves lifting no more

(continued...)

state agency psychologist, Jonathan M. Gransee, Psy.D., who examined Wall on June 11, 2007, and on November 26, 2007, and the opinions of J. J. Kowalski, M.D., a state agency psychiatrist, and Frank M. Mrykalo, Ed.D., a state agency psychologist, who reviewed Wall's medical records. Tr. 378-385, 390-405 and 432-456.

Dr. Gransee found that Wall had some problems with attention and concentration, but only assessed him with moderate mental limitations and gave him a Global Assessment of Function (GAF) score of 63 on June 11, 2007, and a GAF score of 52 on

---

10.  (...continued)
than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) *Very heavy work.* Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. § 416.967.

November 26, 2007.[11]  Tr. 384 and 436-440.  Dr. Kowalski and Dr. Mrykalo both found that Wall was able to meet the basic mental demands of competitive work on a sustained basis despite his limitations resulting from his impairments. Tr. 405 and 456.

The ALJ also relied on the records of Wall's treatment by psychiatrists at The ReDCo Group, Behavioral Health Services, located in Lehighton, Pennsylvania.  Those records cover the

---

11.  The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness.  *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994).  A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range.  Id.  The score is useful in planning treatment and predicting outcomes.  Id.  The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination.  The rating, however, has two components: (1) symptom severity, and (2) social and occupational functioning.  The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range.  When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two.  Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20.  A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas.  A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning.  Id.  A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.

13

period May 17, 2007 to September 8, 2009. During that period, Wall was given GAF scores in the range of 55-65, and the primary diagnosis was attention deficit hyperactivity disorder and depression. Tr. 421, 423-426 and 474-494. There were 18 appointments during that period and the GAF scores assessed were as follows: 5/16/07 - 60; 7/2/07 - 60; 7/9/07 - 60; 8/15/07 - 55; 9/12/07 - 55; 11/7/07 - 55; 1/8/08 - 55; 4/2/08 - 55; 5/28/08 - 60; 7/23/08 - 55; 10/14/08 - 60; 12/16/08 - 60; 1/13/09 - 60-65; 3/10/09 - 65; 4/14/09 - 65; 7/14/09 - 65; 8/11/09 -65; and 9/8/09 - 65. Id. As in footnote 11, a GAF score of 61-70, represents mild symptoms.

Based on the above residual functional capacity and Wall's age, education and the testimony of a vocational expert, the administrative law judge found, at step five of the sequential evaluation process, that Wall could perform work as an office cleaner, file clerk and hand packer. Additionally, the administrative law judge found that there were a significant number of such jobs in the local, state and national economies. Tr. 41.

The administrative record in this case is 549 pages in length and we have thoroughly reviewed that record. The administrative law judge did a thorough job of reviewing Wall's alleged symptoms and medical records in his decision. Tr. 35-42.

14

Furthermore, the brief submitted by the Commissioner adequately reviews the medical and vocational evidence in this case. Doc. 14, Brief of Defendant. Wall argues that his treating psychiatrists inappropriately represented the severity of his condition. Doc. 9, Plaintiff's Brief, p. 1. This argument is not a basis to question the administrative law judge's decision. Wall has not pointed to any medical opinion which is contrary to the opinions of his treating physicians.

No treating or examining physician has indicated that Wall suffers from physical or mental functional limitations that would preclude him from engaging in the limited range of work set by the administrative law judge in his decision for the requisite statutory 12 month period.[12] No physician indicated that Wall was incapable of working at that level on a full-time basis after he turned 18.

The administrative law judge relied on the opinions of a state agency psychiatrist and two psychologists, and the records of his treating physicians. The administrative law judge's reliance on those opinions was appropriate. See Chandler v.

---

12. As stated earlier in this memorandum, to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A)(emphasis added).

Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

We are satisfied that the administrative law judge appropriately took into account all of Wall's mental and physical limitations in the residual functional capacity assessment.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), we will affirm the decision of the Commissioner.

An appropriate order will be entered.